IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMY HINKLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12–cv–0133–MJR–SCW |
| | ) |
| RICK WHITE & | ) |
| THOMAS OLIVERIO, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM & ORDER

REAGAN, District Judge:

This § 1983 civil rights suit comes before the Court on Defendants' Motion for Summary Judgment. For the reasons explained below, the motion (Doc. 79) is granted.

FACTUAL & PROCEDURAL BACKGROUND[1]

After 26 years in the Illinois State Police ("ISP"), Plaintiff Jimmy Hinkle retired in 2004. In 2006, he was elected Sheriff of Wayne County, Illinois. He ran for re-election, but lost the February 2010 primary and did not pursue running as an independent. In June 2010, Plaintiff's house burned down. His year went downhill from there.

In midsummer, Plaintiff's stepdaughter falsely accused him of sexually abusing her by rubbing chigger medicine on her clitoris. Defendant Rick White (an

---

[1] Because the case is before the Court at the summary judgment stage, all evidence is viewed in the light most favorable to Plaintiff. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013).

1

ISP investigator) pursued those allegations, occasionally with direction from (or at least with the knowledge of) his supervisor, Defendant Thomas Oliverio (then an ISP lieutenant). White interviewed Plaintiff's stepdaughters. One, who also had chiggers treated by her stepfather on the day in question, immediately questioned the veracity of her sister's accusations.

Undaunted, White pursued the case. In several interviews, Plaintiff denied his stepdaughter's charges. The stepdaughter recanted her account multiple times, and an Illinois prosecutor declined to press charges against Plaintiff. (Doc. 89-8, 76). Over the course of the investigation, however, White improperly disclosed confidential information to people outside his chain of command, and made statements that Plaintiff molested his stepdaughter. White also told (or at least strongly hinted to) several people that Plaintiff had burned his own house down. Via White's dissemination of false information, the investigation (including the accusations against Plaintiff and the identity of his accuser) made its way into the public sphere: witnesses deponed they heard Plaintiff was a child molester through the "rumor mill" and at least one local newspaper.

Because unfounded allegations against him were publicized, Plaintiff maintains (and provides some evidence to support the assertion) that—in addition to the emotional trauma caused by White's defamation—he is unable to find supervisory work as a police officer.[2] Pursuant to 42 U.S.C. § 1983, he filed this

---

[2] Plaintiff also alleges that his son's restaurant—which leased property owned by Plaintiff—failed because ISP troopers ceased dining there, and that "the allegations['] impact in the general community also severely hurt the reputation of the restaurant." (Doc. 32, 6). As discussed below, Plaintiff does not have a constitutionally-protected liberty interest in his (or his restaurant's)

2

lawsuit in February 2012. After District Judge G. Patrick Murphy dismissed Plaintiff's First Amended Complaint, a Second Amended Complaint was filed. (Doc. 33). The Second Amended Complaint survived a motion to dismiss (*see* Doc. 43) and (upon Judge Murphy's retirement in December 2013) the case was transferred to the undersigned district judge.

Defendants brought the instant summary judgment motion in February 2014. It ripened in March. The motion raises numerous alternative arguments, including, *inter alia*, sufficiency of the evidence re: any stigma attached to Plaintiff, sufficiency of the evidence re: Defendants' dissemination of defamatory information, and qualified immunity. The Court need not reach those alternative arguments, however, because Defendants' primary point—that Plaintiff cannot show a constitutionally-protected liberty interest—is dispositive. The undersigned will grant Defendants' motion for the reasons explained below.

ANALYSIS

1. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012) (citing FED. R. CIV. P. 56(a)). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v.*

---

reputation alone. There are doubtless some possibilities foreclosed to him because of damage to his reputation, but that foreclosure implicates state defamation law—not the Constitution.

*Beverly Healthcare, LLC,* 656 F.3d 540, 547 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case"—evidence on which a reasonable jury could rely. *Porter v. City of Chi.,* 700 F.3d 944, 956 (7th Cir. 2012) (citing *Goodman v Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010)). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party (here, Plaintiff). *Anderson,* 699 F.3d at 994; *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). But the district court may not resolve issues of credibility when deciding a summary judgment motion: "Those are issues for a jury at trial, not a court on summary judgment." *Williams v. City of Chi.,* 733 F.3d 749, 752 (7th Cir. 2013).

### 2. *Due Process Analysis: No Implication of Protected Liberty Interest*

The Fourteenth Amendment's Due Process clause forbids a state to deprive any person of "life, liberty, or property, without due process of law." **U.S. Const. amend. XIV § 1.** Prevailing on a procedural due process claim[3] requires a plaintiff to show a state actor has deprived him of a constitutionally protected liberty or property interest without due process of law. *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005). The inquiry is two-fold: (1) is there a protected property or liberty

---

[3] Plaintiff does not attempt to characterize Defendants' actions as a *substantive* due process claim—the pleadings and the caselaw he brings to bear reflect a theory of relief based only on procedural due process.

4

interest, and if so (2) what process is due. *McMahon v. Kindlarski*, 512 F.3d 983, 987–88 (7th Cir. 2008). In the instant case, Plaintiff has alleged that, because Defendants called his good name into question (via publicized allegations of child abuse and arson), they deprived him of his occupational liberty interest: "the liberty to follow a trade, profession, or other calling." *See Draghi v. Cnty. of Cook*, 184 F.3d 689, 693 (7th Cir. 1999). Unfortunately for Plaintiff, the Constitution is not implicated by mere defamation: even assuming Defendants defamed him, Plaintiff does not have a liberty interest in remaining free from that defamation absent formal state action.

In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court rejected the notion that due process protections are triggered "if a government official defames a person, without more." *Paul v. Davis*, 424 U.S. 693, 708 (1976). The Court, refusing to broaden a rule divined from precedent, held that due process protections attach only where state action resulted in a distinct alteration (or extinguishing) of a right or status previously recognized by state law. *Id.* at 711. In a public flyer, the plaintiff had been maligned as a shoplifter shortly before all charges against him were dropped. *Id.* at 695–96. There was no liberty interest: the Court juxtaposed Constitutionally-protected alteration of a plaintiff's legal status with the plaintiff's mere interest in his reputation—an interest that is "simply one of a number which the State may protect against injury by virtue of its tort law." *Id.* at 712. The *Paul v. Davis* Court relied on several venerable rulings to explain how due process protections require both reputational damage and attendant state action.

5

In *United States v. Lovett*, due process protected three employees who had been forbidden from government service because a House of Representatives subcommittee found them guilty of subversive activity. *Lovett*, 328 U.S. 303, 314 (1946). In *Joint Anti-Fascist Refugee Committee v. McGrath*, six Justices viewed any stigma imposed by official action of the Attorney General—divorced from its effect on a person's legal status (e.g. loss of tax exemption, loss of government employment)—as an insufficient basis for invoking due process protections. *Paul*, 424 U.S. at 704–05 (explaining *Joint Anti-Fascist Refugee Comm. v McGrath*, 341 U.S. 123 (1951)). In *Cafeteria Workers v. McElroy*, the Court found the revocation of a government contractor's ID badge (and subsequent ban from her worksite) comported with due process, implicitly acknowledging that due process protected her legal status as badge-holder (and employee). *Paul*, 424 U.S. at 705–06 (explaining *Cafeteria Workers v. McElroy*, 367 U.S. 886 (1961)). And in *Wisconsin v. Constantineau*, the government action—"posting" an individual's name on a list of people forbidden to buy or receive alcoholic beverages—was a protected liberty: it "significantly altered [the plaintiff's] status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." *Paul*, 424 U.S. at 707–09. *See also Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what *the government* is doing to him, notice and an opportunity to be heard are essential.")(emphasis added).

The Seventh Circuit has applied *Paul*'s rule—"defamation alone, even by a state actor, does not violate the Due Process Clause"—to cases like the one at bar. *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010) (citing *Paul*, 424 U.S. 693). "To avoid constitutionalizing state defamation law, defamation by a government actor does not implicate the Due Process Clause unless a right or status previously recognized by state law was distinctly altered or extinguished." *Id.* (internal quotation marks omitted). In other words, to implicate the Due Process Clause, defamation by a state actor must be accompanied by some formal state action.

In *Abcarian*, the Seventh Circuit assumed due process protected a university doctor whose rivals formally reported a malpractice settlement to two government entities, thus implicating formal licensing sanctions (i.e. sanctions with legal—not just reputational—effect). *Id.* at 933–34, 941. In *Dupuy*, child-care workers were "effectively … barred" from future employment when they were "indicated"—listed on a central state register—for abuse and neglect. *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005). In dicta from *Hojnacki*, the Seventh Circuit commented the inability to find work in the defamed's chosen profession may be an alteration of legal status of a non-government employee if the defamation led to termination of employment. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 548 (7th Cir. 2002). *Accord Wroblewski v. City of Washburn*, 965 F.2d 452, 456–57 (7th Cir. 1992) (defamatory statements not "incident to" an adverse employment action, and therefore did not implicate a liberty interest). And in *Townsend*, due process was presumed to protect a coach who was very publicly fired from his public school job. *Townsend v.*

*Vallas*, 256 F.3d 661, 669–70 (7th Cir. 2001). *See also Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987) ("If a … government *formally* banned a person from a whole category of employment, it would be infringing on liberty of occupation.").

Here, even assuming Plaintiff suffered from state-law defamation by Defendants, he did not suffer from formal state action like licensing sanctions (*Abcarian*), Congressional findings (*Lovett*), placement on a central state register (*Dupuy*), or termination (*Cafeteria Workers, Hojnacki, Wroblewski, Townsend*). On the contrary, Plaintiff was not terminated from his job (the accusations occurred after he had already lost a primary election), no state agency concluded he was a child abuser (or arsonist), and a state prosecutor refused to bring charges against him. The damages he suffered, therefore, were purely reputational. *See Paul*, 424 U.S. at 712 ("[I]nterest in reputation is simply one … which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions."); *Seith v. Chi. Sun-Times, Inc.*, 861 N.E.2d 1117, 1126 (Ill. 2007) (statement defamatory where it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with" him). Plaintiff's reputation may have suffered greatly as a result of Defendants' false statements, but no legal status was altered, thus no procedural protections were implicated. *See McGrath*, 341 U.S. at 183–84 (Jackson, J., concurring) (Organizations "are not dissolved, subjected to any legal prosecution, punished, penalized, or prohibited from carrying on any of their activities. Their claim of injury is that they cannot attract audiences, enlist

8

members, or obtain contributions as readily as before. *These, however, are sanctions applied by public disapproval, not by law*.").

This case, then, falls squarely within the rule followed in *Paul* and *McGrath*: without the concomitant alteration of some legal status—an alteration not present here—the stigma of defamation by a state actor does not trigger due process protections. *See Dupuy*, 397 F.3d at 503 ("[O]nly the alteration of legal status justifies the invocation of procedural safeguards."); *Siegert v. Gilley*, 500 U.S. 226, 234 (1991) (mere defamation does not deprive a person of a Fourteenth Amendment liberty, even when it causes "serious impairment of [one's] future employment."). *Accord Hanneman v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 754–55 (7th Cir. 2012) (affirming summary judgment because plaintiff did not establish defendants' statements caused an "alteration in legal status."). Plaintiff's Due Process claims implicate no constitutionally-protected liberty or property interest, so his case fails.

CONCLUSION

Viewed in light most favorable to Plaintiff, Defendants' statements about abuse allegations levelled at Plaintiff showed an egregious lack of professionalism, especially given a prosecutor's decision not to bring charges against Plaintiff. But grossly unprofessional, even defamatory statements are not—without more—actionable under the United States Constitution. *See Paul*, 424 U.S. at 712 ("defamatory publications, however seriously they may have harmed [the plaintiff's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."). Plaintiff suffered no change in his legal status incident

9

to any potential defamation, so Defendants' Motion for Summary Judgment (**Doc. 79**) is **GRANTED**.

The Clerk is **DIRECTED** to enter judgment in favor of Defendants Rick White and Thomas Oliverio, and against Plaintiff Jimmy L. Hinkle. All case settings are **CANCELLED**, and all other pending motions are **MOOT**.

IT IS SO ORDERED.
DATE: <u>May 7, 2014</u>           <u>s/ *Michael J. Reagan*           </u>
                                   MICHAEL J. REAGAN
                                   United States District Judge